UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THE SCHOOL BOARD OF
ST. JOHNS COUNTY, FLORIDA,

    Plaintiff,

v.                                        Case No.   3:24-cv-874

P.L., by and through P.L.'s
Parents, D.L. and B.L.,

    Defendant.
_____/

## COMPLAINT

The School Board of St. Johns County, Florida ("Board"), hereby files this complaint against P.L., by and through P.L.'s Parents, D.L. and B.L ("Defendant"), seeking a *de novo* judicial review and challenging a Final Order issued by the Florida Division of Administrative Hearings ("DOAH"), and states as follows:

### Introduction

1. This Complaint is filed pursuant to the Individuals with Disabilities Education Act, as amended, 20 U.S.C. §1400 *et seq*. ("IDEA") and Rule 6A-6.03311(9)(w), Florida Administrative Code.

2. Through this Complaint, the Board seeks to review, challenge, and have this Court reverse a Final Order entered on May 28, 2024, by Florida

Administrative Law Judge ("ALJ") Nicole D. Saunders in Florida Division of Administrative Hearings ("Division") Case No. 24-0326E.

## Jurisdiction

3. This Court has jurisdiction pursuant to 20 U.S.C. §1415(i)(2)(A), §1415(i)(3)(A)-(C) and Rule 6A-6.03311(9)(w), Florida Administrative Code.

4. In seeking to review, challenge and vacate and/or reverse the Final Order, the Board is a party "aggrieved by the findings and decision" of a due process hearing officer within the meaning of the IDEA. 20 U.S.C. §1415(i)(2)(A).

## The Parties

5. Defendant P.L. is a minor child who, at various times, was enrolled as a student in the School District of St. Johns County, Florida ("District"). Defendant's parents are D.L. and B.L.

6. Upon information and belief, Defendant currently resides in St. Johns County, Florida.

7. The Plaintiff is a district school board responsible for the operation, control, and supervision of all free public schools located in the School District. §1001.32(2), Fla. Stat.

8. The Board is vested with the power to sue. §1001.41(4), Fla. Stat. The Board is also a "local educational agency" as defined under the IDEA. 20 U.S.C. §1401(19); 34 C.F.R. §300.28.

2

## Brief Background of Defendant's Education

9. Defendant attended elementary, middle, and high schools in the District.

10. At all times material, Defendant received exceptional student education ("ESE") services pursuant to an Individual Education Plan ("IEP").[1]

11. Defendant attended a high school in the District as a ninth grader during the 2022-2023 school year. During Defendant's ninth grade school year, his IEP team met several times to address, among other things, Defendant engaging in self-injury, inappropriate contact with others, and physical aggression. Throughout the entirety of the school year, Defendant spent the majority of his day in ESE self-contained classes.

12. Defendant also attended a high school in the District during the 2023-2024 school year as a tenth grader. He continued to receive ESE services through his IEP and started the year in four ESE self-contained classes and three general education classes.

13. From August 2023 through September 2023, Defendant engaged in multiple violent escalations in school. As a result, on September 20, 2023, an IEP team meeting was held to, among other things, provide additional

---

[1] More detailed information concerning Defendant, including the nature of the student's disabilities, schools of enrollment, and copies of fillings in the lower proceeding, will be transmitted to the court as the record on appeal in a manner that preserves Defendant's privacy rights.

support to Defendant, create a staggered reentry to general education classes, and complete reevaluations for a functional behavior assessment ("FBA") and behavior intervention plan ("BIP").

14. Defendant continued to engage in disruptive and unsafe acts in October of 2023. As such, another IEP team meeting was held on October 10, 2023, to consider placement for Defendant. After a multi-hour meeting, the team determined that placement full time in the ESE self-contained classroom with additional adult assistance for four weeks was necessary to meet Defendant's needs.

15. On November 7, 2023, another IEP team meeting was held to, among other things, review Defendant's FBA and BIP, revise Defendant's BIP, discuss prior behavior incidents, and review data. The IEP team agreed to place Defendant in the ESE self-contained classroom for four periods per day and general education classes for three periods.

16. In December 2023, Defendant punched a staff member two to three times when the staff member failed to say "great" instead of "good." That same month, Defendant kicked a hole in a classroom wall. On December 14, 2023, a meeting was held at which data was reviewed and a revised BIP was prepared.

17. From the end of December 2023 through January 2024, Defendant engaged in several disruptive and unsafe behaviors including, without limitation, disrupting a general education class by yelling, striking himself,

hitting the walls and doors, running out the classroom, striking two staff members, pacing the room, frightening other students, and forcing the class to be evacuated. Defendant also engaged in various acts of physical aggression that caused injuries.

18.     On January 17, 2024, an IEP team meeting was held to review Defendant's progress and discuss the need for a reevaluation, including an FBA and BIP.

19.     On January 22, 2024, another IEP team meeting was held. The team focused on Defendant's behavior and the skills he needed to be more successful. Data was discussed during the IEP team meeting and shared with Defendant's family as well as discipline records and disciplinary incidents.

20.     The discussion included the magnitude of Defendant's behaviors that occurred across all settings on the school campus, particularly physical aggression, safety concerns, and his need for additional individualized instruction in social skills and tolerance training (in-the-moment training to help Defendant when he is frustrated).  After discussion, the team agreed to provide 60 minutes per day of social skills instruction throughout the day instead of in one sitting. These skills could be better taught in a self-contained classroom than in a general education environment because of the ability to provide more individualized attention to Defendant and explicit instruction.

21. The self-contained setting also offered more opportunities for teaching and helping Defendant build the skills to tolerate different situations that caused him to be frustrated and upset.

22. Specific instruction to build tolerance skills, such as calming strategies, and practicing different scenarios and talking through those scenarios is not something that can be accomplished during general education instruction. Moreover, the self-contained class had fewer distractions and was smaller, allowing for more teaching moments.

23. Tolerance training was also not implemented in a general education setting, because it required discussions with Defendant about things that could make him upset and escalate into physical aggression.

24. As a result, the team decided to move Defendant to a self-contained classroom for all but one general education class; however, the decision was not simply to provide 60 minutes of social skills instruction throughout the day, the team was also concerned about the safety of Defendant, students, and teachers, because he hurt people. The decision was also not based solely on his behavior in the general education environment – it also included his behavior and challenges during transitions and in the self-contained setting. Ultimately, the goal of the IEP team was to get Defendant back into a general education setting, but they needed to help him control and manage his behaviors and triggers for his safety and the safety of others.

25. The IEP team agreed to meet prior to Spring Break to review data and progress.

26. Also on January 22, 2024, a revised BIP was created to assist with Defendant's behaviors.

27. Even after the January 22, 2024, IEP team meeting, Defendant's behaviors escalated.

### The Due Process Proceedings

28. On January 23, 2024, Defendant filed a Request for Due Process Hearing ("DP Complaint") with the Board. The Board transmitted the DP Complaint to the Division that same day.[2]

29. On March 4, 2024, the Division entered an Amended Notice of Hearing by Zoom Conference identifying the following issues to be addressed at the due process hearing:

> Whether the School Board predetermined the student's placement in a self-contained exceptional student education (ESE) classroom.
>
> Whether the School Board provided the parent(s) with an opportunity to meaningfully participate in the January 17 and 22, 2024, individualized education plan (IEP) meetings.
>
> Whether changing the placement to a self-contained ESE classroom is a denial of a free appropriate public education (FAPE).

---

[2] On February 2, 2024, the Circuit Court of the Seventh Judicial Circuit, in and for St. Johns County, Florida, in a case styled School Board of St. Johns County, Florida, v. P.L., a Minor, by and through his Mother and Best Friend, B.S. (Case No. CA24-0156), entered an Order Granting Temporary Injunction, finding that Defendant had numerous violent outbursts in January 2024 that resulted in injuries to staff and that Defendant posed an immediate threat to the safety of others. Thus, Defendant's right to stay-put was no longer in place.

> Whether changing the placement to a self-contained ESE classroom is a violation of least restrictive environment (LRE).

30. As alleged in the Complaint, the only remedies sought by Defendant were as follows:

> **\*PROSOSED REMEDY, RESOLUTION OR SOLUTION:**
> Proposed remedy:
> 1. IEP meeting to address his needs
> 2. Move Peter back to the general education classes immediately
> 3. Provide updated FBA/BIP
> 4. Training for all school personnel on Peter's specific behavior plan and needs, including any staff that he may have contact with, i.e. office staff, cafeteria staff, etc.

31. Regarding the remedies sought, the Board stated in its response that (1) it agreed to schedule an IEP team meeting to address Defendant's parents' concerns, if any, regarding Defendant's needs, (2) it did not agree that, *at the time*, placing Defendant in two general education classes was appropriate to meet his needs, (3) it agreed to schedule an IEP team meeting to review Defendant's current FBA/BIP, and (4) it provided notice that it already trained school personnel who worked with Defendant on his behavior plan.

32. A four-day due process hearing was held via-Zoom conference on April 1, 3, 4, and 5, 2024.

33. On May 28, 2024, the Division issued a Final Order. Since a redacted copy of the Final Order is not yet available from the Florida Department of Education, a copy of the Final Order will be filed under seal separate from this Complaint.

8

34. Ultimately, in the Final Order, the Division correctly found that the Board did not engage in predetermination or deny Defendant or his parent the opportunity to meaningfully participate in IEP team meetings held on January 17 and 22, 2024.

35. However, the Division incorrectly held in the Final Order that Defendant's placement as determined by his IEP team on January 22, 2024, was not the least restrictive placement and therefore denied Defendant FAPE. In reaching such findings, the Division, among other things, incorrectly interpreted data, misunderstood the purposes and reasons for increasing Defendant's time in his ESE classes, incorrectly determined that Defendant received "significant benefits" from observing his non-disabled peers in general education classes, failed to properly evaluate the impact of Defendant's presence in the general education environment on his classmates, and improperly placed too much weight on Defendant's behavior in ESE classes as a reason for keeping him in general education classes. Of note, this Complaint is not intended, nor is it required, to include an exhaustive list of all specific evidence and legal arguments to be raised in the Board's challenge to the Final Order.

36. As relief, the Division ordered that the Board do two things that it had already agreed to do as set forth in its response to the DP Complaint – schedule an IEP team meeting and train staff. The only relief obtained by

Defendant was relief not even sought in the DP Complaint; that is, that the Board "remove" disciplinary infractions from Defendant's records for each infraction that occurred after January 22, 2024. The Board submits that the Division does not have jurisdiction under the Family Educational Rights and Privacy Act and Florida law to order the "removal" of education records related to a student. Moreover, the Division does not have authority under the IDEA to address issues not raised in the DP Complaint (*i.e.*, alleged behavioral infractions transpiring after the filing of the DP Complaint).

37. To be clear, Plaintiff seeks to challenge all the Findings of Fact, Conclusions of Law, and relief set forth in the Final Order, with the exception of the Conclusions of Law that the Board did not engage in predetermination or deny Defendant and his parent the opportunity to meaningfully participate in IEP team meetings in January 2024, through a *de novo* review of the underlying administrative proceeding. The Final Order is not supported by the facts or law applicable to this case.

38. All conditions precedent to this action have occurred or have been waived.

### Count I
### Review of Final Order under the IDEA

39. The Board reasserts and incorporates the allegations contained in paragraphs 1-38.

40. The IDEA and Florida law authorize the Board to bring a civil action in this Court if it is aggrieved by the decision of an Administrative Law Judge.

41. This Court is to receive the records of the administrative proceeding, hear additional evidence at the request of either party and, basing its decision on the preponderance of the evidence, grant the relief it determines appropriate.

42. Accordingly, this Court has the jurisdiction and authority to reverse and vacate the May 28, 2024, Final Order (filed separately under seal).

43. The Board asserts that the testimony, record evidence, and applicable law do not support the Findings of Fact, Conclusions of Law, and relief contained in the Final Order, with the exception of the Conclusions of Law that the Board did not engage in predetermination or deny Defendant and his parent the opportunity to meaningfully participate in IEP team meetings in January 2024 and, therefore, the Final Order should be reversed/vacated.

WHEREFORE, the Board respectfully requests that the Court enter judgement (a) reversing and/or vacating the Final Order; (b) determining that the Board complied with the least restrictive environment and FAPE provisions of the IDEA; (c) declaring the Board the prevailing party in the administrative proceeding and in this proceeding; (d) awarding the Board

attorneys' fees and costs; and (e) any other relief this Court deems just and appropriate.

Respectfully submitted this 23rd day of August 2024.

>*/s/ Terry J. Harmon*
>**TERRY J. HARMON**
>Florida Bar Number: 0029001
>tharmon@sniffenlaw.com
>**DESIGNATED LEAD COUNSEL**
>
>**SNIFFEN & SPELLMAN, P.A.**
>123 North Monroe Street
>Tallahassee, FL 32301
>Telephone: (850) 205-1996
>Facsimile: (850) 205-3004
>
>*Attorneys for Plaintiff, The School Board of St. Johns County, Florida*